The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hoag, plaintiff's Form 44, and Defendants' brief before the Full Commission. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
*****************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. At the time of the alleged injury or contraction of an occupational disease, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employer-employee relationship existed at all relevant times.
3. The carrier on the risk is Zurich-American Insurance Company.
4. Plaintiff's average weekly wage at the time of the alleged injuries was $295.20.
5. The parties stipulated to the following medical records:
a. Office notes of Dr. M. Thomas
b. Office notes of Dr. Joseph M. James
c. Office notes of Dr. James R. Dineen
d. Office notes of Dr. Donald D. Getz
 e. Correspondence between Dr. Lance J. Wright and Dr. Kevin Scully
f. Records from Cape Fear MRI Center
g. Records from Cape Fear Memorial Hospital
h. Evaluation from Occupational Health Services
i. Records from Wilmington Health Associates
6. The issues to be resolved are:
 a. Has plaintiff sustained injuries by accident to her cervical and lumbar spine and left arm?
 b. Has plaintiff contracted an occupational disease involving her left arm, cervical spine, and lumbar spine?
*****************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was fifty-two years old, separated, with four adult children. Although plaintiff did not finish high school, she attended Cape Fear Community College and received a certificate for a Nurses' Aide course.
2. From 1978 to 1992, plaintiff was employed as a spot welder at Siemens Energy and Automation. For some years she has worked the day shift from 7 a.m. to approximately 3:30 p.m.
3. Plaintiff's job duties as a welder required her to weld a part into a circuit breaker. She handled approximately 6,500 circuit breakers each day. Her work was production based. The parts plaintiff welded were small, and in order to accomplish her task, she had to sit with her neck in a flexed forward position. The spot welding involved the use of right and left buttons which needed to be pressed before each spot weld could be made after the circuit breakers were set up on the assembly line. This task involved repetitive lifting of the hands and arms to about shoulder height to hit the buttons on the left and right sides. During the course of a typical work day, plaintiff hit the buttons thousands of times. At one point she was taken off the spot welder, requiring use of the buttons, and was assigned to one operated by a foot pedal. Despite the use of the foot pedal, she continued to have intermittent problems with her back and neck.
4. Plaintiff reported pains in her neck and left elbow to the company doctor, Dr. Thomas, as far back as 1989. Her reports of pain became worse in 1990 and 1991. In 1991 and 1992, she was sent by defendant-employer to see a number of other doctors and specialists as well as being sent to Occupational Health Services for a duty evaluation for fitness.
5. Dr. Getz, who examined plaintiff, also arranged for cervical spine x-rays and an MRI. Tests showed no abnormalities and Dr. Getz released plaintiff for full work duties without restrictions. In addition, he released her permanently from his care, indicating there was nothing else that could be done. Plaintiff had been treated for her cervical spine and elbow with cortisone injections. She was diagnosed with epicondylitis. In addition, she underwent physical therapy. Plaintiff was released after her therapy and given exercises to do at home.
6. Dr. Schimizzi, a rheumatologist who examined plaintiff in January, 1992, referred her for a duty evaluation to Dr. John W. Cromer. Plaintiff presented to Dr. Cromer on March 23, 1992 with localized tenderness over the lateral epicondyle. Dr. Cromer did not see swelling, redness, or forearm muscular soreness. Plaintiff's Tinel and Phalen's signs were negative bilaterally. Plaintiff's range of motion at the wrist was full, her upper extremity reflexes intact and there was no sensory deficit in her fingertips. Despite a report from Dr. Susan Torres that plaintiff's nerve conduction studies suggested carpal tunnel syndrome, Dr. Cromer found no clinical evidence to support a diagnosis of carpal tunnel syndrome. Dr. Cromer diagnosed plaintiff with left elbow epicondylitis. He found no irregularity of plaintiff's neck and head. Dr. Cromer released plaintiff to return to work with no restrictions other than an admonishment not to do overhead work.
7. Dr. Schimizzi next recommended that plaintiff consult Dr. Dennis B. Nicks for an evaluation of her elbow on April 14, 1992. Dr. Nicks did not diagnose plaintiff with carpal tunnel syndrome based on negative Tinel's and Phalen's tests. Dr. Nicks diagnosed plaintiff with a "tennis elbow" type of tendinitis.
8. Plaintiff's job involving repetitive motion contributed to her symptoms of epicondylitis, tendinitis and/or "tennis elbow." Dr. Nicks diagnosed plaintiff as having symptomology "fitting into the overuse syndrome." There is no evidence of record to suggest that plaintiff's repetitive motion occupation was a significant contributing factor to plaintiff's symptoms of tendinitis and epicondylitis.
9. In addition, there is insufficient evidence of record from which to determine by its greater weight that plaintiff's employment with defendant-employer Siemens placed her at an increased risk of developing tendinitis and epicondylitis than members of the general public not so employed.
10. Plaintiff also complained of severe back pain, especially in the lower lumbar area. Plaintiff's pain, although listed on the Form 18 as occurring in March, 1992, in actuality was first mentioned by her in visits to doctors back in the early 1980's. She consistently reported back pain on her visits to Dr. Thomas.
11. Plaintiff's pain worsened from 1990 to 1992. She underwent numerous examinations which included x-rays and MRI's of her spine.
12. Plaintiff did not report any specific traumatic incident regarding an injury to her back, neck or arm while at work at defendant-employer's plant. There is insufficient evidence of record from which to determine by its greater weight that plaintiff at any time had a sudden change or unusual occurrence in her work environment or that there was any particular incident which resulted in her sustaining injuries to her arm, neck or back. Defendant-employer's medical records list many instances of plaintiff being examined for neck and back pain. Plaintiff suffered pain in her back for six or seven years.
13. In February, 1991, plaintiff presented to Coastal Orthopaedics in order to have an MRI of the cervical spine.
14. A lumbar spine MRI exam conducted at Cape Fear revealed a central bulging of the L5-S1 disc without any definitive herniated nucleus pulposus. The other lumbar areas were completely unremarkable both in the transaxial and sagittal planes. Dr. Schimizzi, on June 15, 1992, diagnosed plaintiff with intractable low back pain and degenerative disc disease with a bulging disc at the L5-S1 level. Dr. Schimizzi noted that plaintiff had been released by her physical therapist. Dr. Schimizzi informed plaintiff there was nothing more he could do for her condition. He released her without any restrictions. Plaintiff did not lose any time from work due to her back.
15. Plaintiff was not diagnosed by any physician with any permanent disability to her lower back or with any permanent disability to her neck and elbow.
16. There is no testimony of record that plaintiff lost wages due to pains in her lower back, neck and/or elbow. Each time after seeing doctors for those conditions, she was released to return to work with minor restrictions.
17. Plaintiff's pains in her neck, back and arm are persistent, chronic aches and pains which she suffered on and off for many years. No specific event ever occurred at work involving her neck, back or elbow.
18. There is insufficient evidence of record from which to determine by its greater weight that plaintiff had any injury by accident arising out of and in the course of her employment with defendant-employer.
*****************
Based upon the findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. There was no interruption of plaintiff's work routine at defendant-employer Siemen's or the introduction of unusual conditions likely to result in unexpected consequences. No untoward or unlooked for event not expected or designed by plaintiff occurred to cause injury to plaintiff's upper or lower back. Poe v. Acme Builders, 69 N.C. App. 147,316 S.E.2d 338 (1984).
2. Plaintiff has no disease and no disability of the upper or lower back, cervical or lumbar spine related to causes and conditions which are characteristic of and peculiar to plaintiff's employment with defendant-employer. G.S. § 97-53 (13).
3. Plaintiff's tendinitis, epicondylitis, and/or "tennis elbow" syndrome did not result from an injury by accident arising out of and in the course of plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 92-2 (6).
4. Plaintiff's tendinitis, epicondylitis, and/or "tennis elbow" is not a disease or disability related to causes and conditions which are characteristic of and peculiar to plaintiff's employment with defendant-employer. N.C. Gen. Stat. § 97-53 (13).
5. Plaintiff is, therefore, entitled to no compensation under the provisions of the North Carolina Workers' Compensation Act. G.S. § 97-2 (6); G.S. § 97-53 (13).
*****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
ORDER
1. Under the law, plaintiff's claim must be, and the same hereby is DENIED.
2. Each side shall bear its own costs of this appeal.
 S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
S/ _____________________ COY M. VANCE COMMISSIONER
S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER